# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2019 SEP 23  PI 3: 42

U.S. DISTRICT COURT
DISTRICT OF MASS.

## Civil Action No.

███████████████, **an individual,**
**Plaintiff,**

**v.**

**UMass-Amherst, a public educational institution of more than 300 employees,**
**Dr. Derek Lovley, an individual,**
**Dr. Toshiyuki Ueki, an individual,**
**Dr. John Lopes, an individual,**
**Defendants.**

### Dated April 22, 2019

## COMPLAINT FOR DAMAGES WITH DEMAND FOR JURY TRIAL

The present document is organized as described in the Table of Contents on page 2. References are made to applicable exhibits, appended hereto and of which a detailed list is furnished on page 3.



Complaint for damages and jury trial demand_█████████ v. UMass-Amherst and three other Defendants_042219

## **Table of Contents**

**List of Exhibits** ............................................................................................................ **4**

**Affidavit and Nature of the Allegations** ............................................................... **5**

**Procedural History and Exhaustion of Administrative Remedies** .......................... **8**

**Jurisdiction and Venue**.................................................................................. **10**

**Parties to the Action**..................................................................................... **11**

    *Plaintiff*.................................................................................................. *11*

    *Defendants*............................................................................................ *11*

**Facts and Allegations Common to All Counts/Causes of Action**.......................... **13**

    *Factual background*................................................................................ *13*

    *Demographics at UMass-Amherst Department of Microbiology*........................... *13*

    *Grants and UMass-Amherst Microbiology Department Research's Trust Fund*............... *13*

    *When Dr. Lovley sent Plaintiff a letter of invitation, he had only two ongoing Office of Naval Research grants, each for a specific project, to support postdoctoral researchers* ................................... *14*

    *Plaintiff's early researcher career*............................................................... *15*

    *Plaintiff was hired after having submitted two original research proposals* ...................... *15*

    *Plaintiff's two original research proposals were plagiarized/converted by UMass-Amherst*............. *15*

    *Plaintiff's was allowed to work in the Lovley lab for only 128 days out of the full year promised in her contract*.................................................................................................. *16*

    *Plaintiff's contributions brought during the 128 days worked at UMass-Amherst were denied*........ *16*

**First Series of Causes of Action (Disparate Treatment)** ................................................ **17**

*I. Gender ∩ Color ∩ Non-immigrant Status Disparate Treatment against UMass-Amherst, Derek Lovley, Toshiyuki Ueki, and John Lopes in violation of Title VII of the Civil Rights Act of 1964* .... 17

*II. Gender ∩ Color ∩ Non-immigrant Status Disparate Treatment against UMass-Amherst, Derek Lovley, Toshiyuki Ueki, and John Lopes in violation of Chapter 151B of Massachusetts General Laws* ................................................................................................................................................. 19

**Second Series of Causes of Action (Retaliation)** ........................................................ **21**

*III. Retaliation against UMass-Amherst, Derek Lovley, and John Lopes in violation of Title VII of the Civil Rights Act of 1964* ............................................................................................... 21

*IV. Retaliation against UMass-Amherst, Derek Lovley, and John Lopes in violation of the Exchange Visitor Program implemented by the Mutual Educational and Cultural Exchange Act of 1961* ....... 21

*V. Retaliation against UMass-Amherst, Derek Lovley, and John Lopes in violation of Chapter 151B of Massachusetts General Laws* ................................................................................................ 23

**Third Series of Causes of Action (Hostile Work Environment Harassment)** ........................ **24**

*VI. Hostile Work Environment Harassment against UMass-Amherst, Derek Lovley, Toshiyuki Ueki, and John Lopes, in violation of Title VII the Civil Rights Act of 1964* ............................................ 24

*VII. Hostile Work Environment Harassment against UMass-Amherst, Derek Lovley, Toshiyuki Ueki, and John Lopes, in violation of Chapter 151B of Massachusetts General Laws* ............................... 24

**Prayer for Relief** ...................................................................................................... **25**

**Jury Demand** .......................................................................................................... **26**

**Certification** .......................................................................................................... **27**

*Complaint for damages and jury trial demand_____ ███████ v. UMass-Amherst and three other Defendants_042219*

## List of Exhibits

Exhibit "01", Copy of the affidavit of ███████████ signed and notarized on January 30, 2019 ................................................................................................................................ 8

Exhibit "02", Copy of the three right-to-sue notices mailed to Plaintiff by EEOC on October 2, 2019 ................................................................................................................................ 8

Exhibit "03", Copy of the affidavit filed by ███████ at the MCAD on July 31, 2017 signed and notarized on April 18, 2019 ................................................................... 12

## Affidavit and Nature of the Allegations

1. Plaintiff is represented pro se and swears under the pains and penalties of perjury that her statements are true.

2. This is a suit in law and equity to redress several violations of federal and state anti-discrimination laws.

   – Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*.), in particular:

   42 U.S.C. § 2000e-2(a) Employer practices.

   "It shall be an unlawful employment practice for an employer -

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."


   42 U.S.C. § 2000e-3(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.

   "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-•management committee controlling apprenticeship or other training or retraining, including on—the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made

a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

–  The Exchange Visitor Program implemented by the Mutual Educational and Cultural Exchange Act of 1961 (22 U.S.C. §§ 2451 *et seq*.), in particular:

<u>22 C.F.R. 62.10(d) Monitoring of exchange visitors.</u>

"Exchange visitors' participation in their exchange program must be monitored by employees of the sponsor. Monitoring activities must not include any retaliation or discrimination against exchange visitors who make adverse comments related to the program. No sponsor or employee of a sponsor may threaten program termination, remove from the program, ban from the program, adversely annotate an exchange visitor's SEVIS record, or otherwise retaliate against an exchange visitor solely because he/she has filed a complaint; instituted or caused to be instituted any proceeding; testified or is about to testify; consulted with an advocacy organization, community organization, legal assistance program or attorney about a grievance or other work-related legal matter; or exercised or asserted on behalf of himself/herself any right or protection."

–  And provisions in the Massachusetts General Laws, in particular:

<u>M.G.L. c. 151B, § 4(1)</u>

"It shall be an unlawful practice: For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, gender identity, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, genetic information, ancestry or status as a veteran of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

<u>M.G.L. c. 151B, § 4(4)</u>

"It shall be an unlawful practice: For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five."

3.  At all relevant times, Plaintiff has claimed discrimination on the grounds of (a) Disparate Treatment involving three intersecting characteristics, Gender ∩ Color ∩ Foreign (non-immigrant exchange visitor) Status; (b) Retaliation; and (c) Hostile Work Environment Harassment as a result of the discrimination.

## Procedural History and Exhaustion of Administrative Remedies

4.  On June 12, 2014, Plaintiff filed at the MCAD, with the assistance of three interns, a pre-complaint docketed as 14-SEM-01503. On October 9, 2014, a former MCAD investigator, Atty. Olga Serafimova, stated to Plaintiff that there was *evidence of retaliation*. On November 5, 2014, Plaintiff assisted with Atty. Serafimova filed a second pre-complaint at the MCAD docketed as 14-SEM-02918. This second pre-complaint was amended twice: the first time was pro se on November 21, 2014 and the second time was on May 27, 2015 with the assistance of another former MCAD investigator to whom her two pre-complaints had been reassigned, Maryann Brunton. On June 1, 2015, both amendments were approved by a former MCAD Investigative Commissioner, Jamie Williamson. On January 22, 2015, Plaintiff filed with the assistance of Ms. Brunton a third pre-complaint at the MCAD docketed as 15-SEM-00113.

5.  These three MCAD pre-complaints were originally filed all against one unique Respondent, UMass-Amherst, a public educational institution of more than 300 employees.

6.  On or about the date of their respective filing with MCAD, a pre-complaint with EEOC was automatically filed for each of these three MCAD pre-complaints, and the resulting three EEOC pre-complaints were docketed respectively as 16C-2014-01775, 16C-2015-00177, and 16C-2015-00604.

7.  On November 8, 2016, these three MCAD/EEOC pre-complaints were amended, clarified, supplemented, and consolidated with an affidavit of Plaintiff setting forth violations during the period between April 2011 and September 2016, and by adding three individual Respondents, Derek Lovley, Toshiyuki Ueki, and John Lopes.

8.  On March 20, 2017, the aforementioned amendment, clarification, supplementation, and consolidation were approved by Ms. Williamson.

9.  On July 31, 2017, Plaintiff's November 8, 2016 affidavit was both corrected and supplemented with novel acts of reprisal expanding the violation period to April 2017.

10.   On October 5, 2017, Plaintiff received three lack of probable cause determinations (one for each of the three MCAD pre-complaints) based on the investigative disposition of the new MCAD investigator to whom Plaintiff's three pre-complaints had been reassigned, Melvin Arocho. These determinations were signed by Ms. Williamson on September 29, 2017, i.e., two days after the appointment on September 27, 2017 of her replacement, Monserrate Quinones.

11.   On October 10, 2017, Plaintiff gave notice that she was requesting a preliminary hearing to appeal from these three lack of probable cause determinations.

12.   On September 6, 2018, one unique preliminary hearing was held for these three appeals.

13.   On September 19, 2018 (i.e., only 13 days after the above-mentioned preliminary hearing), Ms. Quinones affirmed the September 29, 2017 three lack of probable cause determinations. On September 24, 2018, Plaintiff officially received a complete set of notices about these three final decisions.

14.   On January 22, 2019, as explained by the copy of the notarized affidavit of █████████ ████████ enclosed herein as Exhibit "01", Plaintiff received three EEOC dismissal notices for the pre-complaints 16C-2014-01775, 16C-2015-00177, and 16C-2015-00604, accompanied with three right-to-sue notices collectively attached hereto as Exhibit "02". Therefore, Plaintiff has exhausted her administrative remedies.

15.   On April 22, 2019, Plaintiff filed the present complaint for damages with jury trial demand within 90 days of receipt of the aforementioned three right-to-sue letters (Exhibit "02").

## Jurisdiction and Venue

16.   Jurisdiction over the federal civil rights claims is proper pursuant to 28 U.S.C. § 1331.

17.   Supplemental jurisdiction of this court's is properly invoked under 28 U.S.C. § 1367 concerning the claims made pursuant to Massachusetts General Laws because these state law claims arise from the same nucleus of operative facts as the federal law claims.

18.   Venue is proper in the United States District Court for the district of Massachusetts in accordance with 28 U.S.C. § 1391.

## Parties to the Action

### Plaintiff

19.     A motion for impoundment of Plaintiff's personal information, filed with this pleading, was taken under advisement by this Court.

–   At all relevant times, Plaintiff was a participant in the work-and-study-based J-1 Exchange Visitor Program primarily administered by the U.S. Department of State. Participants are integral to the success of this program. In carrying out the responsibilities of the Exchange Visitor Program, the Department of State designates public and private entities to act as exchange sponsors. UMass-Amherst was the sponsoring agency for Plaintiff. As a result, UMass-Amherst had total control over the J-1 non-immigrant visa and work authorization issued by the Department of State to allow Plaintiff to be respectively present and employed in the United States. J-1 non-immigrants are therefore sponsored by exchange programs accredited by the U.S. Department of State. These programs are designed to promote the interchange of persons, knowledge, and skills, in the fields of arts, education, medicine, and science.

–   At all relevant times, Plaintiff was a resident alien of the United States for tax purposes because she met the substantial presence test for the calendar year (January 1-December 31).

### Defendants

20.     UMass-Amherst is a public educational institution (for higher education) with a principal place of business at Whitmore Administration Building, 181 Presidents' Drive, Amherst, MA 01003. Although a state entity for the purpose of the Fifth and Fourteenth Amendments to the Constitution of the United States and the federal statutes enacted for the enforcement of the rights recognized therein, UMass-Amherst is not an "arm of the state" immune to suit under the Eleventh Amendment.

21.     Dr. Derek Lovley is an individual who at all relevant times was employed as a tenured Professor of the Microbiology Department of the College of Natural Sciences of

UMass-Amherst located at 635 North Pleasant Street, Amherst, MA 01003. At all relevant times, Dr. Lovley was authorized to supervise/mentor postdoctoral researchers on topics included in his domain of expertise.

22.    Dr. Toshiyuki Ueki is an individual who at all relevant times was employed as a non-tenure track Research Assistant Professor under the supervision of Derek Lovley in the Microbiology Department of the College of Natural Sciences of UMass-Amherst located at 635 North Pleasant Street, Amherst, MA 01003. At all relevant times, Dr. Ueki had no accreditation to supervise/mentor postdoctoral researchers. On May 4, 2017, Dr. Ueki, who had *persistently* been alleging since April 30, 2014 that he was Plaintiff's supervisor/mentor, recanted this allegation.

23.    Dr. John Lopes is an individual who at all relevant times was employed as both a tenured Professor and the Chair of the Microbiology Department of the College of Natural Sciences of UMass-Amherst located at 635 North Pleasant Street, Amherst, MA 01003. At all relevant times, Dr. Lopes possessed (a) no qualification in research topics that belong to Dr. Lovley's domain of expertise, (b) was not accredited to supervise/mentor postdoctoral researchers on such topics, and (c) was not mentoring any postdoctoral researcher in the specific domain of expertise for which he had earned credentials.

## Facts and Allegations Common to All Counts/Causes of Action

### Factual background

24.  Enclosed as Exhibit "03" is a notarized copy of the affidavit that Plaintiff first filed at the MCAD on July 31, 2017. No modifications were made to this affidavit except at the first paragraph where Plaintiff's personal sensitive information was removed vs. the version filed at the MCAD on July 31, 2017.

25.  This affidavit is corroborated by 182 Exhibits that are not attached. Some critical facts and allegations underlying Plaintiff's affidavit are outlined below.

### Demographics at UMass-Amherst Department of Microbiology

26.  Upon information, the Microbiology Department of the College of Natural Sciences of UMass-Amherst was created more than 50 years ago. Upon belief, the hiring of highly educated trained skilled dark-skinned female researchers, whether born in the U.S. or born in a foreign nation, has been almost null in this department.

27.  To date Plaintiff is the only foreign non-immigrant exchange visitor dark-skinned female ever hired at the rank of a postdoctoral researcher by this Department.

28.  To date this department has not yet ever hired a dark-skinned female, whether born in the U.S. or born in a foreign nation, at the rank of a Faculty.

### Grants and UMass-Amherst Microbiology Department Research's Trust Fund

29.  Postdoctoral researchers are generally supported by grants awarded to fund the research projects that they are hired to carry out. These grants mostly finance research projects for which predicted specific experiments with anticipated deadlines are already spelled out in the applications that led to the award of this funding. Therefore, as a general rule, postdoctoral researchers' activities are constricted to the predefined projects attached to the grants supporting their positions.

30.  The budget of UMass-Amherst Microbiology Department includes a Research Trust Fund ("RTF") that is restricted and not tied to any specific project because its purpose is to fill out financial gaps between grants. In consequence, no laid-out experiments,

deadlines, or progress reports requirements are bound to this fund. For this reason, this limited fund cannot support postdoctoral researchers' efforts.

**When Dr. Lovley sent Plaintiff a letter of invitation, he had only two ongoing Office of Naval Research grants, each for a specific project, to support postdoctoral researchers**

31.  Dr. Lovley misrepresented the source that would fund Plaintiff's position when he requested a waiver to fill up a postdoctoral position with Plaintiff. Indeed, Dr. Lovley did not have a Department of Energy ("DOE") grant to support a position for Plaintiff for two years despite making such a statement in writing.

32.  Dr. Lovley, while making plans to hire Plaintiff, simultaneously began the hiring process of another postdoctoral researcher, Dr. Yang Tan. Unlike Plaintiff, Dr. Tan's hiring followed proper procedure: supported with a grant attached to a project (an Office and Naval Research "ONR" grant) with reasonable time to come to this position. Dr. Yang Tan received his letter of invitation in January 2014 to be hired on April 27, 2014 and he was officially hired on that date.

33.  Shortly after hiring Plaintiff on February 2, 2014, Dr. Lovley set in motion the hiring of another postdoctoral researcher, Dr. David F. J. Walker. Similarly to Dr. Tan's appointment, there was no departure from standards in the hiring of Dr. Walker: supported with a grant attached to a project (another ONR grant) with reasonable time to come to this position. Dr. Walker was officially hired in August 2014 but UMass-Amherst has consistently refused to disclose the date when his letter of invitation was sent as well as the date of hiring contained in this letter.

34.  Although offered a position before the above-mentioned two not-dark-skinned male postdoctoral researchers, Plaintiff was not hired on any of the two ONR grants that Dr. Lovley had available at that time to contract postdoctoral researchers. When Plaintiff's letter of invitation was finally emailed to her on November 12, 2013, she was rushed to start five days later, i.e., on November 17, 2013 with as an explanation the loss of the alleged DOE grant funding the position offered to her if she did not come right away.

35.    Plaintiff's position at UMass-Amherst Microbiology Department was actually supported almost exclusively on this department's budget via the RTF.

**Plaintiff's early researcher career**

36.    Plaintiff had already acquired postdoctoral research experience at the Biomedical Center of Uppsala University in Sweden in 2009-2010, and then at the School of Medicine of Yale University in Connecticut in 2010-2011. And Plaintiff had already be named as an author on three published scientific research articles.

37.    The two aforementioned postdoctoral researchers who were hired around the same time than Plaintiff had absolutely no prior postdoctoral experience. In addition, they had coauthored less published research articles than Plaintiff. Remarkably, one of them (i.e., Dr. Walker) had not yet been named as an author on a published scientific research article in spite of having earned a Doctorate degree in 2011.

**Plaintiff was hired after having submitted two original research proposals**

38.    Plaintiff worked harder than the average postdoctoral researcher to obtain a position at UMass-Amherst Department of Microbiology. In particular, Plaintiff worked harder than Dr. Tan and Dr. Walker who, unlike Plaintiff, did not devise any original research proposals to support their applications to a postdoctoral position at UMass-Amherst Department of Microbiology.

**Plaintiff's two original research proposals were plagiarized/converted by UMass-Amherst**

39.    Before her hiring by UMass-Amherst Department of Microbiology, the first research proposal shared by Plaintiff in 2011, was plagiarized two years later (in March 2013) in a review in which Plaintiff received no credit. After her hiring by UMass-Amherst Department of Microbiology, this same 2011 proposal led to a second review published about three years after her hiring (in November 2016) without acknowledging Plaintiff in the credits. The work efforts that led to the production of these two reviews were financed via grants that were not supposed to support objectives related to Plaintiff's 2011 first research proposal.

40.    The second research proposal, shared by Plaintiff in 2013, was plagiarized in 2014 and led to one article and one patent application published respectively two years (in July

2016) and four years (in December 2018) after her hiring, without crediting her. The ONR grant that principally supported this conversion of Plaintiff's second research proposal had been awarded for the performance of a totally unrelated set of experiments.

## Plaintiff's was allowed to work in the Lovley lab for only 128 days out of the full year promised in her contract

41.     Plaintiff was allowed to work in the lab directed by Dr. Lovley at the UMass-Amherst Department of Microbiology for 128 days in total, from:

   – February 3, 2014 until April 8, 2014, i.e., for 65 days (including Wednesday, February 5, 2014; Thursday, February 13, 2014; and Monday, February 17, 2014 when UMass-Amherst was closed, because Plaintiff went to work despite all);

   – Then from May 28, 2019 until July 29, 2014, i.e., for 63 days (including Friday, July 4, 2014 during which Plaintiff came to work).

42.     Plaintiff's contract did not include a probation period or a description of when and how her work performance would be evaluated. Plaintiff's performance was never assessed and no postdoctoral researcher employed by UMass-Amherst was ever subjected to a performance evaluation 65 days or even 128 days after being hired.

## Plaintiff's contributions brought during the 128 days worked at UMass-Amherst were denied

43.     During her 128 worked days in the Lovley lab, Plaintiff contributed to two scientific research articles that were published respectively two-and-a-half years (in June 2016) and three years after her hiring (in January 2017).

44.     During these 128 worked days, Plaintiff enabled UMass-Amherst to discover the work of Prof. Lisa Craig. Subsequently, UMass-Amherst began collaborating with Prof. Craig and, in article published about one year after Plaintiff's hiring (in March 2015), Prof. Craig' help was acknowledged with no mention respecting Plaintiff's crucial role in the establishment of a collaboration with Prof. Craig.

## First Series of Causes of Action (Disparate Treatment)

## I. Gender ∩ Color ∩ Non-immigrant Status Disparate Treatment against UMass-Amherst, Derek Lovley, Toshiyuki Ueki, and John Lopes in violation of Title VII of the Civil Rights Act of 1964

45.    The facts and allegations contained in paragraphs 1-185 of Plaintiff's notarized affidavit (Exhibit "03") are re-stated, as if each were stated herein in their entirety, and are incorporated in this count I by reference.

46.    Plaintiff is a foreign non-immigrant dark-skinned female hired to undertake a postdoctoral research training under the supervision of Dr. Lovley.

47.    Dr. Lovley discriminated against Plaintiff based on her gender, color, and foreign status and severely retaliated against her by subjecting her to unfair working conditions (via fraudulent inducement of employment, misuse of federal funds, no physical accommodation), violating her right for using sick time benefits, expressing animus against her for engaging in concerted protected activities, denying her a fair period of work followed by an objective evaluation of her achievements, maligning her character and work performance, to constructively terminate her.

48.    Dr. Ueki with his offensive, demeaning, arguing behavior specifically directed toward Plaintiff harassed her. Dr. Ueki infringed upon his duties by forcing on Plaintiff an abusive supervisory treatment whereas he did not even have accreditation to supervise/mentor postdoctoral researchers.

49.    Dr. Lopes intensely retaliated against Plaintiff to the point where he segregated her, subjected her to limited and unsafe work conditions, defamed her, corrupted her employment records, and even illegally seized and sequestrated her mail. Dr. Lopes abused his functions by auto-designing himself as Plaintiff's supervisor whereas he was not qualified to supervise/mentor postdoctoral researchers on topics that did not belong to his domain of expertise.

50.    Dr. Lovley's, Dr. Ueki's, and Dr. Lopes' words and actions created an intimidating, hostile, and abusive work environment permeated with discrimination and retaliation

sufficiently severe or pervasive to alter the compensation, terms, conditions or privileges of Plaintiff's employment.

51.   UMass-Amherst is strictly liable for the conduct of its Faculty (whether tenured, on tenure track, or on non-tenure track).

52.   UMass-Amherst, albeit informed multiple times by Plaintiff that Dr. Lovley, Dr. Ueki, and Dr. Lopes were creating a hostile work environment, took no proper action to correct this situation. Instead, UMass-Amherst supported and even furthered to an unfathomable extent the discrimination (while trying to legitimate it) already perpetrated against Plaintiff by these three Faculty.

53.   UMass-Amherst denied Plaintiff the due process rights guaranteed to her by its own codes, policies, and regulations, which formed part of the contract with the postdoctoral researchers' Union, the Ombuds' office services, the Equal Opportunity (and Diversity) grievance procedures, the Workplace Bullying grievance procedure, and the misconduct in research complaint procedures; in order to suspend her pay, "paper" her employment records, deny her authorship and inventorship with respect to the work products in which she participated, and invade her personal privacy.

54.   UMass-Amherst several times took advantage of its power over Plaintiff's J-1 visa and work authorization to thwart her attempt to transfer to another lab, to refuse to extend her exchange visitor program or reinstate her in this program, to incorporate an unproven moral taint in her records with the Department of State, to deny her right to receive unemployment insurance benefits from the Department of Unemployment Assistance, to avert an investigation of the violent crime she was victim of on its campus as well as of the profiling harassment she endured from employees of its Police Department and employees of its Du Bois library.

55.   In sum, UMass-Amherst's words and actions completely sabotaged Plaintiff's career, removing tremendous talent from the profession while depriving Plaintiff of her unique means to ensure the economic self-sufficiency indispensable to maintain her subsistence and preserve her safety.

*First Series of Causes of Action*

## II. Gender ∩ Color ∩ Non-immigrant Status Disparate Treatment against UMass-Amherst, Derek Lovley, Toshiyuki Ueki, and John Lopes in violation of Chapter 151B of Massachusetts General Laws

56.  The facts and allegations contained in paragraphs 1-185 of Plaintiff's notarized affidavit (Exhibit "03") are re-stated, as if each were stated herein in their entirety, and are incorporated in this count II by reference.

57.  Plaintiff is a foreign non-immigrant dark-skinned female hired to undertake a postdoctoral research training under the supervision of Dr. Lovley.

58.  Dr. Lovley discriminated against Plaintiff based on her gender, color, and foreign status and severely retaliated against her by subjecting her to unfair working conditions (via fraudulent inducement of employment, misuse of federal funds, no physical accommodation), violating her right for using sick time benefits, expressing animus against her for engaging in concerted protected activities, denying her a fair period of work followed by an objective evaluation of her achievements, maligning her character and work performance, to constructively terminate her.

59.  Dr. Ueki with his offensive, demeaning, arguing behavior specifically directed toward Plaintiff harassed her. Dr. Ueki infringed upon his duties by forcing on Plaintiff an abusive supervisory treatment whereas he did not even have accreditation to supervise/mentor postdoctoral researchers.

60.  Dr. Lopes intensely retaliated against Plaintiff to the point where he segregated her, subjected her to limited and unsafe work conditions, defamed her, corrupted her employment records, and even illegally seized and sequestrated her mail. Dr. Lopes abused his functions by auto-designing himself as Plaintiff's supervisor whereas he was not qualified to supervise/mentor postdoctoral researchers on topics that did not belong to his domain of expertise.

61.  Dr. Lovley's, Dr. Ueki's, and Dr. Lopes' words and actions created an intimidating, hostile, and abusive work environment such that said conduct unreasonably interfered with Plaintiff's exchange visitor program annihilating all opportunities (grants, trainings, conferences, teaching, publications, inventions, work performance

evaluations, recommendation letters, fellowships) for advancing her early researcher career to an established position.

62.   UMass-Amherst is strictly liable for the conduct of its Faculty (whether tenured, on tenure track, or on non-tenure track).

63.   UMass-Amherst, albeit informed multiple times by Plaintiff that Dr. Lovley, Dr. Ueki, and Dr. Lopes were creating a hostile work environment, took no proper action to correct this situation. Instead, UMass-Amherst supported and even furthered to an unfathomable extent the discrimination (while trying to legitimate it) already perpetrated against Plaintiff by these three Faculty.

64.   UMass-Amherst denied Plaintiff the due process rights guaranteed to her by its own codes, policies, and regulations, which formed part of the contract with the postdoctoral researchers' Union, the Ombuds' office services, the Equal Opportunity (and Diversity) grievance procedures, the Workplace Bullying grievance procedure, and the misconduct in research complaint procedures; in order to suspend her pay, "paper" her employment records, deny her authorship and inventorship with respect to the work products in which she participated, and invade her personal privacy.

65.   UMass-Amherst several times took advantage of its power over Plaintiff's J-1 visa and work authorization to thwart her attempt to transfer to another lab, to refuse to extend her exchange visitor program or reinstate her in this program, to incorporate an unproven moral taint in her records with the Department of State, to deny her right to receive unemployment insurance benefits from the Department of Unemployment Assistance, to avert an investigation of the violent crime she was victim of on its campus as well as of the profiling harassment she endured from employees of its Police Department and employees of its Du Bois library.

66.   In sum, UMass-Amherst's words and actions completely sabotaged Plaintiff's career, removing tremendous talent from the profession while depriving Plaintiff of her unique means to ensure the economic self-sufficiency indispensable to maintain her subsistence and preserve her safety.

*Complaint for damages and jury trial demand_███████████ v. UMass-Amherst and three other Defendants_042219*

## Second Series of Causes of Action (Retaliation)

### III. Retaliation against UMass-Amherst, Derek Lovley, and John Lopes in violation of Title VII of the Civil Rights Act of 1964

67. The facts and allegations contained in paragraphs 1-185 of Plaintiff's notarized affidavit (Exhibit "03") are re-stated, as if each were stated herein in their entirety, and are incorporated in this count III by reference.

68. The assertions of paragraphs 46-55 of the instant complaint (cf. the count I) are hereby re-averred and said assertions are incorporated by reference as if fully set forth herein.

### IV. Retaliation against UMass-Amherst, Derek Lovley, and John Lopes in violation of the Exchange Visitor Program implemented by the Mutual Educational and Cultural Exchange Act of 1961

69. The facts and allegations contained in paragraphs 1-185 of Plaintiff's notarized affidavit (Exhibit "03") are re-stated, as if each were stated herein in their entirety, and are incorporated in this count IV by reference.

70. Plaintiff is a foreign non-immigrant dark-skinned female hired to undertake a postdoctoral research training under the supervision of Dr. Lovley.

71. Dr. Lovley discriminated against Plaintiff based on her gender, color, and foreign status and severely retaliated against her by subjecting her to unfair working conditions (via fraudulent inducement of employment, misuse of federal funds, no physical accommodation), violating her right for using sick time benefits, expressing animus against her for engaging in concerted protected activities, denying her a fair period of work followed by an objective evaluation of her achievements, maligning her character and work performance, to constructively terminate her.

72. Dr. Ueki with his offensive, demeaning, arguing behavior specifically directed toward Plaintiff harassed her. Dr. Ueki infringed upon his duties by forcing on Plaintiff an abusive supervisory treatment whereas he did not even have accreditation to supervise/mentor postdoctoral researchers.

73.   Dr. Lopes intensely retaliated against Plaintiff to the point where he segregated her, subjected her to limited and unsafe work conditions, defamed her, corrupted her employment records, and even illegally seized and sequestrated her mail. Dr. Lopes abused his functions by auto-designing himself as Plaintiff's supervisor whereas he was not qualified to supervise/mentor postdoctoral researchers on topics that did not belong to his domain of expertise.

74.   Dr. Lovley's, Dr. Ueki's, and Dr. Lopes' words and actions created an intimidating, hostile, and abusive work environment such that said conduct unreasonably interfered with Plaintiff's exchange visitor program annihilating all opportunities (grants, trainings, conferences, teaching, publications, inventions, work performance evaluations, recommendation letters, fellowships) for advancing her early researcher career to an established position.

75.   UMass-Amherst is strictly liable for the conduct of its Faculty (whether tenured, on tenure track, or on non-tenure track).

76.   UMass-Amherst, albeit informed multiple times by Plaintiff that Dr. Lovley, Dr. Ueki, and Dr. Lopes were creating a hostile work environment, took no proper action to correct this situation. Instead, UMass-Amherst supported and even furthered to an unfathomable extent the discrimination (while trying to legitimate it) already perpetrated against Plaintiff by these three Faculty.

77.   UMass-Amherst denied Plaintiff the due process rights guaranteed to her by its own codes, policies, and regulations, which formed part of the contract with the postdoctoral researchers' Union, the Ombuds' office services, the Equal Opportunity (and Diversity) grievance procedures, the Workplace Bullying grievance procedure, and the misconduct in research complaint procedures; in order to suspend her pay, "paper" her employment records, deny her authorship and inventorship with respect to the work products in which she participated, and invade her personal privacy.

78.   UMass-Amherst several times took advantage of its power over Plaintiff's J-1 visa and work authorization to thwart her attempt to transfer to another lab, to refuse to extend her exchange visitor program or reinstate her in this program, to incorporate an

unproven moral taint in her records with the Department of State, to deny her right to receive unemployment insurance benefits from the Department of Unemployment Assistance, to avert an investigation of the violent crime she was victim of on its campus as well as of the profiling harassment she endured from employees of its Police Department and employees of its Du Bois library.

79. In sum, UMass-Amherst's words and actions completely sabotaged Plaintiff's career, removing tremendous talent from the profession while depriving Plaintiff of her unique means to ensure the economic self-sufficiency indispensable to maintain her subsistence and preserve her safety. As such, UMass-Amherst became complicit in the trafficking of Plaintiff in the United States, for white-collar human exploitation, initiated by Dr. Lovley under the guise of an invitation for interchange of scientific knowledge and skills.

## V. Retaliation against UMass-Amherst, Derek Lovley, and John Lopes in violation of Chapter 151B of Massachusetts General Laws

80. The facts and allegations contained in paragraphs 1-185 of Plaintiff's notarized affidavit (Exhibit "03") are re-stated, as if each were stated herein in their entirety, and are incorporated in this count V by reference.

81. The assertions of paragraphs 57-66 of the instant complaint (cf. the count II) are hereby re-averred and said assertions are incorporated by reference as if fully set forth herein.

## Third Series of Causes of Action (Hostile Work Environment Harassment)

## VI. Hostile Work Environment Harassment against UMass-Amherst, Derek Lovley, Toshiyuki Ueki, and John Lopes, in violation of Title VII the Civil Rights Act of 1964

82.　The facts and allegations contained in paragraphs 1-185 of Plaintiff's notarized affidavit (Exhibit "03") are re-stated, as if each were stated herein in their entirety, and are incorporated in this count VI by reference.

83.　The assertions of paragraphs 46-55 of the instant complaint (cf. the count I) are hereby re-averred and said assertions are incorporated by reference as if fully set forth herein.

## VII. Hostile Work Environment Harassment against UMass-Amherst, Derek Lovley, Toshiyuki Ueki, and John Lopes, in violation of Chapter 151B of Massachusetts General Laws

84.　The facts and allegations contained in paragraphs 1-185 of Plaintiff's notarized affidavit (Exhibit "03") are re-stated, as if each were stated herein in their entirety, and are incorporated in this count VII by reference.

85.　The assertions of paragraphs 57-66 of the instant complaint (cf. the count II) are hereby re-averred and said assertions are incorporated by reference as if fully set forth herein.

## **Prayer for Relief**

Wherefore the Plaintiff seeks judgment as follows:

A.    For expungement of employment records corrupted with lies;

B.    For expungement of immigration records corrupted with lies;

C.    For reinstatement and, accordingly, issuance of an updated or a new employment authorization;

D.    For investigation and prosecution of the physical attack that Plaintiff was victim of on UMass-Amherst campus;

E.    For expungement of police records corrupted with lies respecting the aforementioned physical attack and the harassment perpetrated by the Du Bois library personnel.

F.    For compensatory damages, including loss of wages and benefits (past and future), and emotional distress from Defendants according to proof at trial;

G.    For pre-judgment and post-judgment interest to the extent allowable by law;

H.    For attorneys' fees and costs from Defendants pursuant to 42 U.S.C. § 2000e-5(k);

I.    For punitive, exemplary, and special damages from Defendants, according to proof at trial;

J.    For such and further relief as this Honorable Court deems just and proper.

*Complaint for damages and jury trial demand_█████████ v. UMass-Amherst and three other Defendants_042219*

## <u>**Jury Demand**</u>

The Plaintiff demands a trial by jury on all claims so triable.

## Certification

Under the Federal Rule of Civil Procedure 11, by signing below, the Plaintiff certifies that the present complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) otherwise complies with the requirements of Rule 11.

Respectfully submitted,
/s/ █████████████, Pro Se